UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>vs.<br><br>STEPHEN BOOTH, JR., *et al.*,<br><br>    Defendants. | 2:08-cr-00283-RCJ-RJJ<br><br>**O R D E R** |

This matter came before the Court for a hearing on Defendant Stephen Booth's Motion for Preauthorization Discovery (#300). The Court has considered the Defendants' Motion (#300); the Government's Response (#315); and the arguments presented at the hearing.

## BACKGROUND

On October 28, 2008, a federal grand jury returned a multiple-count, multiple-defendant indictment. The indictment charges that the various defendants are members of the "Playboy Bloods," a RICO enterprise (as defined in 18 U.S.C. § 1961(4)) engaged in a "pattern of racketeering activity" (as defined in 18 U.S.C. § 1961(5)). Defendants Stephen Booth, Jacorey Taylor, Reginald Dunlap, and Marquette Tillman have each been charged with committing a violent crime, murder, in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(1) and (a)(2). These defendants have also been charged with the use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1), 924 (j)(1), and 924(j)(2).

This is a capital case. Federal death penalty procedure is based on the Federal Death Penalty Act of 1994, codified at 18 U.S.C. § 3591 *et seq*. The Government must file and serve notice of its intent to seek the death penalty. 18 U.S.C. § 3593(a)(1). The notice of intent must be served at a "reasonable time before the trial" or before the court accepts a guilty plea.

18 U.S.C. § 3593(a). The notice must set forth "the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death ...." 18 U.S.C. § 3593(a)(2).

In order to aid in the even-handed and non-arbitrary application of Federal capital sentencing laws, the Department of Justice has issued what is commonly referred to as the "death penalty protocol." *See* United States Attorneys Manual 9-10.000 *et seq*. The protocol mandates that certain procedures be followed in all federal cases in which a defendant may be eligible for the death penalty. The United States Attorney General makes the final decision on whether to seek the death penalty. USAM 9-10.040. The decision is informed, in large measure, by submissions from the United States Attorney for the district in which the case is pending. USAM 9-10.080. The submissions should include a prosecution memorandum[1] which provides, among other things, a detailed death penalty analysis. In that analysis the United States Attorney should identify the applicable threshold intent factors of 18 U.S.C. § 3591, applicable statutory aggravating factors under 18 U.S.C. § 3592(b)-(d) and applicable mitigating factors under 18 U.S.C. § 3592(a). Ultimately, the memorandum includes the United States Attorney's determination as to whether the death penalty should be sought and is submitted to the Department of Justice's Capital Case Unit for review. USAM 9-10.120. If the United States Attorney recommends seeking the death penalty or a member of the Capital Review Committee requests a conference, a Capital Case Unit attorney will meet with representatives of the United States Attorney's office and defense counsel to consider the case. *Id*. After review, the Capital Review Committee makes a recommendation to the Attorney General who makes the final decision regarding whether the Government will seek the death penalty. *Id*.

By way of this motion, Defendant Booth seeks an order for pre-authorization discovery. Each of the death penalty eligible defendants has joined the motion. Specifically, the defendants seek an order requiring the Government to (1) provide a broader range of discovery than what

---

[1] The submissions should also include (1) the death penalty evaluation form, (2) non-decisional information form, (3) the Indictment, (4) a draft notice of intention to seek the death penalty (only if United State Attorney recommends seeking the death penalty), (5) materials provided by defense counsel, (6) a point of contact in the United States Attorney's office, and (7) relevant court decisions. USAM 9-10.080.

- 2 -

1  has already been provided and (2) disclose all *Brady* material relevant to the Government's
2  decision whether to pursue the death penalty. The defendants arguments are based, in large
3  measure, on the internal protocols employed by the Department of Justice in determining whether
4  to seek the death penalty in eligible cases. *See* USAM 9-10.000 *et seq.* The defendants *Brady*
5  arguments center on the premise that *Brady* disclosures ought to be made when they will be of
6  most value to the accused. In this instance, the defendants argue that the requested information
7  will be of most value at the death penalty authorization phase.

8  The Government, noting that it has provided significant discovery including the homicide
9  files, *Brady*, and *Jencks* materials related to the murders (Counts 2, 4, 5, and 8 in the Indictment),
10 opposes any further pre-authorization discovery. The Government states that neither the capital
11 statutory sentencing scheme (*see* 18 U.S.C. § 3591 *et seq.*) nor the Department of Justice's death
12 penalty protocol provides for early discovery. The Government also argues that the requested
13 discovery is simply an attempt to circumvent the protections afforded to its death penalty evaluation
14 form and prosecutorial memorandum.

## DISCUSSION

16 It is well established that the USAM does not create discovery rights. *United States v.*
17 *Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) ("[T]he USAM does not create any substantive or
18 procedural rights, including discovery rights.") (citations omitted). Further, in *Fernandez*, the Ninth
19 Circuit held that the death penalty evaluation form and prosecutorial memorandum, prepared by the
20 United States Attorney and submitted to DOJ, are protected by the deliberative process privilege and
21 under the work-product doctrine. 231 F.3d at 1246-47. Consequently, the Court rejects (1) any
22 request to provide discovery or disclose information that is premised on the USAM death penalty
23 protocol procedures, (2) any request for production of the actual death penalty evaluation form or
24 prosecutorial memorandum, and (3) any request for disclosure of the statutory and non-statutory
25 aggravating factors the Government is considering in making its assessment as to whether to seek
26 the death penalty. *See cf.*, *United States v. Diaz*, 2005 WL 1575191 *7 (N.D. Cal. 2005) (ordering
27 significant pre-authorization discovery but excluding disclosure of the government's "identification
28 of the aggravating factors, both statutory and non-statutory, that the government [considered] in

1 making its assessment of whether to seek the death penalty).

2 It is undisputed that the Government has already provided significant material. During the
3 course of the hearing on this matter, the Assistant United States Attorney repeatedly stated that the
4 Government has turned over all of the information and evidence in its possession, including *Brady*
5 material. The only material the Government has not disclosed is *Jencks* and *Giglio* material.

6 In reviewing the merits of this motion, the Court finds the thoroughly reasoned decision in
7 *United States v. Perez*, 222 F.Supp.2d 164 (D. Conn. 2002) persuasive. Here, because the
8 defendants are potentially subject to the death penalty, *Brady* requires the defendants be given an
9 opportunity to view evidence material (in the *Brady* sense) to aggravating or mitigating factors that
10 may apply during the penalty phase of this prosecution. 222 F. Supp. 2d at 168-70. The Court will
11 not accept the government's attempt to constrict its discovery obligations by resorting to technical
12 arguments regarding FED. R. CRIM. P. 16. Courts have the inherent authority to order discovery
13 beyond the confines of Rule 16. *See United States v. Karake*, 2005 WL 1208759 (D.D.C. 2005)
14 (citations omitted). Nor will the Court accept the Government's attempt to benefit from the lack of
15 a standing discovery order in this case. Although helpful in determining scope and timing of
16 disclosures, the lack of a standing discovery order does not relieve the Government of its discovery
17 obligations.

18 In this case, without minimizing the disclosures made by the Government to this point, the
19 Court is convinced that some additional guidance is necessary. The following non-exhaustive list
20 is illustrative of the types of information requested by the defendants that should be disclosed:

21 1. All evidence related to the involvement in the crimes charged in the current Indictment
of any person or persons against whom the Government has not charged offenses carrying the
22 possibility of the death penalty.

23 2. Information and evidence regarding the uncharged criminal conduct of any alleged co-
participant, charged or uncharged, who is <u>not</u> currently eligible for the death penalty.
24

25 3. Information and evidence regarding whether the victim of any alleged murder was
engaged in criminal activity at or near the time of the alleged crimes.

26 4. Information and evidence that persons other than the charged defendants may have had
a motive to kill any victim of a murder currently charged in the Indictment.
27

28 5. Information and evidence related to the commission of any death eligible offense in the
furtherance of a racketeering enterprise alleged in the Indictment which was committed, or was

- 4 -

suspected to have been committed, by any defendant, charged conspirator, or uncharged conspirator, who has not been charged with a death penalty-eligible offense, or who the Government has already decided not to seek the death penalty.

      6. Tangible evidence which the Government intends to use at any penalty phase or which is material to the defense of any penalty phase trial.

      7. All scientific evidence, forensic evidence, tangible objects, or evidence which the Government intends to offer in its case-in-chief at either the guilt or penalty phase, and which a jury may consider for purposes of determining penalty.

      8. Information or evidence that would demonstrate, or tend to demonstrate, that any death eligible defendant in this case suffers now, or suffered at the time of the alleged murders, from any impaired mental capacity amounting to mitigation under 18 U.S.C. 3592(a)(1).

      9. Any uncharged bad acts or uncharged criminal activity known to the Government and allegedly committed by any death-eligible defendant.

      10. Information regarding any payments, benefits, consideration, immunity, or promises that are pertinent to likely witnesses against death eligible defendants.

      11. Information or evidence that demonstrates, or tends to demonstrate, that any of the death-eligible defendants have a character, background, role in the charged death-eligible offenses, or any other factor or fact that would "mitigate against imposition of the death sentence" within the meaning of 18 U.S.C. 3592(a)(8).

The Court is mindful that much of the foregoing information may have already been disclosed but, to the extent it has not, it should be. Nothing in this order should be construed to require the Government to disclose witness statements under *Jencks* (18 U.S.C. § 3500) at this time. Nothing in this order should be construed to require the Government to disclose its death penalty evaluation form or prosecutorial memoranda submitted to the Department of Justice pursuant to USAM 9-10.000 *et seq*. Nothing in this order should be construed to require the Government to disclose the precise statutory and non-statutory aggravating factors it is considering in its assessment of whether to seek the death penalty. Nothing in this order should be construed as a limitation on the Government's continuing discovery obligations.

Finally, although mindful of the Government's concern for witness safety, the Court is convinced that counsel can, as they have in the past, agree to appropriate protections. If there are compelling reasons to modify the disclosures ordered because of witness safety, the Court will entertain such a motion, but only after the parties meet and confer pursuant to Local Rule of Criminal Practice (LCR) 16-1(c).

## **ORDER**

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that the Motion for Preauthorization Discovery (#300) is **GRANTED** in part and **DENIED** in part consistent with the foregoing discussion.

IT IS FURTHER ORDERED that any disclosures required pursuant to this order shall be made on or before July 22, 2010.

DATED this  8th  day of July, 2010.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge