1  DANIEL BOGDEN
   United States Attorney
2  NICHOLAS D. DICKINSON
   PHILLIP SMITH
3  Assistant United States Attorneys
   Organized Crime Strike Force
4  KEVIN L. ROSENBERG
   Department of Justice
5  Organized Crime and Gang Section
         Lloyd D. George United States Courthouse
6        333 Las Vegas Blvd. South, Suite 5000
         Las Vegas, Nevada 89101
7        Telephone:  (702) 388-6336
         Facsimile:  (702) 388-6418
8

9

10 Attorneys for Plaintiff
   United States of America
11

12                 UNITED STATES DISTRICT COURT

13               FOR THE DISTRICT OF NEVADA

14 UNITED STATES OF AMERICA,          ) No. CR 08-283-RJC-RJJ
                                      )
15             Plaintiff,             ) GOVERNMENT'S MEMORANDUM IN
                                      ) COMPLIANCE WITH THE COURT'S
16             v.                     ) SEPTEMBER 6, 2012 ORDER
                                      )
17                                    )
                                      )
18 MARKETTE TILLMAN,                  )
                                      )
19             Defendant.             )
                                      )
20 _____   )

21

22     Plaintiff United States of America, by and through its counsel

23 of record Assistant United States Attorneys Nicholas Dickinson, and

24 Phillip Smith, and Trial Attorney Kevin L. Rosenberg, respectfully

25 file this memorandum in response to the Court's order dated

26 September 6, 2012. (Doc. 749)

27

28                              -1-

**STATEMENT OF THE CASE**

On October 11, 2011, the Government filed its notice of enterprise evidence, addressing evidence that it intended to offer during the Government's case in chief. (Doc. 574) On April 27, 2012, defendant Booth filed a response to the Government's notice. (Doc. 695) On May 12, 2012, defendant Dunlap joined in defendant Booth's response. (Doc. 706) On May 24, 2012, defendant Tillman also joined in defendant Booth's response. (Doc. 707, 708) On June 14, 2012, defendant Taylor filed his own response to the notice of enterprise evidence. (Doc. 722) The Government replied to these motions and joinders on June 18, 2012. (Doc. 726) On August 10, 2012, the Court advised that it would rule on the enterprise issues through a written opinion. (Doc. 745)

On September 6, 2012, the Court issued an order denying the defendants' motions in limine as to nearly every disputed piece of evidence. (Doc. 749) The Court's order concluded by requesting that the Government "file a memorandum explaining its foundation for the admission of any evidence identified in the present Order with respect to which the Court has noted that additional foundation may be necessary." (Doc. 749, p. 11) This includes "the Crosby homicide, the 2002 casino robberies, the VFW incident, Taylor's mental health issues (apart from his alleged admission), the McClodden shooting, and the Dunlap shooting. (Doc. 749, p. 11) . . . .

. . . .

**SUPPLEMENTAL FOUNDATION FOR ADMISSION OF EVIDENCE**

I.   Brandon Crosby Homicide

   The Government seeks to introduce a limited amount of
evidence regarding the homicide of Brandon Crosby.  This evidence
is part of the chain of events that culminated in the murder of
Brian Wilcox.  Two witnesses came forward and identified a
suspect in the murder of Brandon Crosby.  Those two witnesses
were then targeted by Defendant Tillman, who shot a gun at them.
Defendant Tillman was charged with attempted murder in connection
with this shooting and pled guilty to this offense.  Tool-mark
analysis of the shell casings from this attempted murder were
compared to those recovered from the Brian Wilcox murder and are
a match.

   While the government does not intend to 'get into the weeds'
of the Brandon Crosby murder, it is important for the jury to
understand the time line and order of events.  The Government
should be able to present evidence that the reason these two
victims were targeted was not random, but because they were
cooperating with Las Vegas Metropolitan Police Detectives in a
murder investigation of another bloods member, albiet a blood
member from a different city.

   Presentation of this evidence would not prejudice any
defendant unfairly. It merely allows the Government to present
the full picture of events and present motives for crimes.

II.  2002 Casino Robberies

     The defendants are charged with a racketeering conspiracy.
As part of the Government's case, it is required to prove the
enterprise's pattern of racketeering activity.  The indictment
alleges that robberies affecting interstate commerce were part of
the pattern of racketeering activity.  The Government intends to
present evidence of an armed robbery at the Klondike Casino in
Henderson, Nevada.

     On March 21, 2002, Playboy Blood member Jessie James Cooper,
who was armed with a revolver, and another male, who was armed
with an assault rifle, robbed $7,700 from the Klondike Casino in
Henderson, Nevada.  A witness saw a third male driving the get
away car.  Officers located the get away car and the suspects did
not stop.  The car eventually hit a parked car and the suspects
fled. Officers apprehended Cooper, but the two other suspects
escaped.  Officers recovered a knit cap in the get away car.  On
March 22, 2002, officers executed a search warrant at 1710 Curran
Street, Las Vegas, ("The Jets") and recovered a wallet in
Cooper's name and baggies of crack cocaine.  Officers also
executed a search at Cooper's girlfriend's residence, which was
2.3 miles from 1710 Curren, and recovered 82 grams of crack from
a safe.  Cooper admitted in his plea agreement that he was one of
the two armed people who went into the casino and committed the
robbery.  But while detained, Cooper called his aunt and falsely

-4-

stated that he did not go into the casino, rather two people from California committed the robbery.

On February 2003, Cooper pleaded guilty to Hobbs Robbery, 2-cr-00221-LDG and Possession with Intent to Distribute Crack Cocaine, 2-cr-00220-LDG.

The FBI performed DNA analysis on the knit cap that the recovered a knit cap in the get away car.  Defendant Taylor's DNA was found on the knit cap.

Government witness #1 will testify at trial that Tillman and Taylor committed a casino robbery in Henderson in 2002.  This witness will testify that Tillman and Taylor used some of the profits from the casino robbery to buy an automobile for another member of the Playboy Bloods, Delvin Ward.[1]  This witness will testify that Taylor and Tillman were expected to "kick back" some of the money to Delvin Ward because he was the Playboy Blood member who "had all the dope," and this was done to increase their favor with Mr. Ward.

Government witness #2 will testify that he/she talked with Tillman and Taylor about the casino robbery.  These two defendants told the witness that they used firearms to rob the casino as well as other details about th robbery.  This witness will confirm that Delvin Ward received a "kick back" from the

---

[1]  On June 1, 2010, Delvin Ward pleaded guilty to RICO conspiracy and admitted he was a leader organizer.(Doc. 347)

casino robbery from these two defendants.  This witness will testify that Tillman and Taylor bought Mr. Ward an automobile. Taylor and Tillman also gave Ward some of the money involved so they could buy larger quantities of drugs.

It is apparent from the testimony of these two witnesses that the Klondike Casino robbery was committed by members of the Playboy Bloods.  Profit from this armed robbery was split with another Playboy Blood member who "had all the dope."  Profit from this casino robbery was also pooled together to buy larger quantities of controlled substances.  Robberies and narcotics trafficking are both alleged as being part of the pattern of racketeering activity committed by the enterprise.

At this time the Government does not intend to offer direct evidence of any other casino robberies in it's case in chief.  If new evidence comes to light regarding other casino robberies the Government will supplement its response immediately.

III.  <u>Booth Arrested at VFW Hall with a Firearm</u>

Defendant Tillman's description of this event is less than complete.  This incident relates to both the violent nature of the Playboy Bloods as well as their drug trafficking activity.

On October 3, 2003 at around 12:40 hours, LVMPD officers were conducting a bar check at 1905 H St., the VFW hall. Officers observed several subjects standing in the parking lot who appeared to be conducting hand to hand transactions with

people walking up to them briefly.  Officers believed these were
drug transactions because they were passing money back and forth.
When officers approached this area the subjects yelled "5-0!,"
jumped a brick wall and began running.  Defendant Booth ran
through the VFW hall parking lot toward the front door, lifted up
his shirt, grabbed something out of his waist band and threw
something behind the front tire of an automobile.  Defendant
Booth then attempted to hide in the VFW hall but was detained by
security.  Officers discovered that defendant Booth had placed a
.38 special loaded Smith and Wesson firearm underneath the car
while he was fleeing police.  Officers also recovered a highpoint
firearm hidden under a truck in the parking lot as well as a
large bag of marijuana in the truck bed.

Evidence of this incident offers proof of the racketeering
enterprise.  Officers will testify that they observed what
appeared to be drug transactions, taking place in Playboy Blood
territory.  They also observed defendant Booth taking part in
this activity while armed with a loaded weapon.  This supports
the allegations in the Superseding Indictment that Playboy Blood
members carried firearms and trafficked in controlled substances.

IV.   Taylor's Mental Health Issues

The government will not attempt to introduce evidence
relating to defendant Taylor's mental health. The government only
intends to introduce defendant Taylor's admissions that are
relevant to proving his membership in the Playboy Bloods.

V.    <u>The McLodden Shooting</u>

On July 21, 2002, at approximately 23:45 hours, Mr. McClodden was shot in the back at a location at or around 1721 "H" Street.  This incident represents the larger ongoing gang rivalry between the Bloods and the Crips as a whole.  McClodden told LVMPD that he was living with his step-father at the time in this complex, one predominately controlled by the Playboy Bloods. McClodden is a documented member of the North Town Gangster Crips.

McClodden explained that around 22:50 hours he was on his front porch and noticed Steven Booth and Demichael Burks[2] outside.  He then noticed another individual pull into the parking lot.  McClodden believed something "was up," so he called his girlfriend to come pick him up.  When he returned back to his residence he saw defendant Booth, Burks, and two other individuals standing near his home.

McClodden will testify that he saw defendant Booth and Burks point at McClodden and then the other two individuals began running after him.  McClodden will testify that one of the individuals caught up to him and pointed a chrome firearm in his direction while Booth and Burks watched the incident.  As McClodden attempted to get into his home he was shot in the back

_____

[2] On November 1, 2010, Demichael Burks pleaded guilty to RICO conspiracy. (Doc. 411)

-8-

by one of these individuals.  McClodden then observed the individual who shot him flee the scene with Steven Booth and Demichael Burks.  McClodden identified Reynaldo Gardner as the individual who shot him in the back and fled the scene with defendant Booth.

This incident supports the Superseding Indictment which charges the Playboy Bloods with preserving power and territory through violence. (Indictment p.6) This incident supports the Superseding Indictment, which alleges that the Playboy Bloods have rival street gangs including Donna Street Crips[3]. (Indictment p. 3)

More importantly, this incident supports the allegation in the Superseding Indictment that the Playboy Bloods primarily operate in the Sherman Garden Annex and are involved in murder, and attempted murders. (Indictment p. 3)

That defendant Booth and Demichael Burks, known Playboy Bloods members, pointed out a rival gang member in Playboy Blood territory, who was then shot in the back, and the shooter subsequently fled with Booth and Burks, is surely relevant to the enterprise and the pattern of racketeering activity.

. . . .

---

[3]    The Government acknowledges that the victim was an North Town Gangster Crip however the rivalries cover nearly all crip sets.

VI.   DUNLAP SHOT IN DRIVE-BY SHOOTING

       At this time, the government has no intention of introducing evidence that defendant Taylor was shot in a drive by shooting on March 23, 2007.

       DATED this 20th day of Septemebr 2012.


                              Respectfully submitted,

                              DANIEL BOGDEN
                              United States Attorney


                              _____/s/_____
                              NICHOLAS D. DICKINSON
                              PHILLIP SMITH
                              Assistant United States Attorneys

                              KEVIN ROSENBERG
                              Department of Justice
                              Organized Crime and Gang Section

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

-10-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28