DANIEL G. BOGDEN
United States Attorney
NICHOLAS D. DICKINSON
PHILLIP N. SMITH, JR.
Assistant United States Attorneys
KEVIN ROSENBERG
Trial Attorney
Organized Crime and Gang Section
Criminal Division, U.S. Department of Justice
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336 / Fax: (702) 388-6698



FILED

DEC 06 2012

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs<br><br>STEVEN BOOTH,<br><br>           Defendant. | 2:08-cr-00283-RCJ-RJJ<br><br>**PLEA AGREEMENT UNDER**<br>**FED. R. CRIM. P. 11 (c)(1)(A) and (B)** |

Plaintiff United States of America, by and through DANIEL G. BOGDEN, United States Attorney; Nicholas D. Dickinson and Phillip N. Smith, Jr., Assistant United States Attorneys; Kevin Rosenberg, Trial Attorney; the defendant, STEVEN BOOTH, and the defendant's attorneys Shari Kaufman and Rebecca Rosenstein, Assistant Federal Public Defenders, submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A and B).

**I.   SCOPE OF AGREEMENT**

The parties to this Plea Agreement are the United States of America and STEVEN BOOTH (the defendant). This Plea Agreement binds the defendant and the United States Attorney's Office for the District of Nevada. It does not bind any other prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, restitution and forfeiture. It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant.

## II.   DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A.   <u>Guilty Plea</u>.  The defendant knowingly and voluntarily agrees to plead guilty to the following charge as set forth in the superseding indictment returned by the grand jury on January, 24, 2012: <u>Count 1</u>: RICO Conspiracy, in violation of 18 U.S.C. § 1962(d).

B.   <u>Waiver of Trial Rights</u>.  The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the defendant is giving up:

1.   The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

2.   The right to confront the witnesses against the defendant at such a trial, and to cross-examine them;

3.   The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4.   The right to testify in his own defense at such a trial if he so chooses;

5.   The right to compel witnesses to appear at such a trial and testify in the defendant's behalf; and

6.   The right to have the assistance of an attorney at all stages of such proceedings.

C.   <u>Withdrawal of Guilty Plea</u>.  The defendant will not seek to withdraw his guilty plea after he has entered it in court.

D.   <u>Additional Charges</u>.  The United States agrees not to bring any additional charges

1 against the defendant arising out of the investigation in the District of Nevada which culminated in
2 this Plea Agreement and based on conduct known to the United States, except that the United States
3 expressly reserves the right to prosecute the defendant for any crime of violence, as defined by Title
4 18, United States Code, Section 16, in which the defendant may have participated if the defendant
5 commits such a crime after the execution of this Agreement, or for any such crime committed before
6 the execution of this Agreement if the United States had no knowledge of the facts underlying the
7 crime through its investigation, or the defendant did not disclose the crime before the execution of
8 this Agreement

### III. ELEMENTS OF THE OFFENSES

Count 1: The elements of RICO Conspiracy under 18 U.S.C. § 1962(d) are:

1. that on or about the time period described in the Superseding Indictment, an enterprise existed, namely, the Playboy Bloods;

2. the defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the Playboy Bloods through a pattern of racketeering activity;

3. the defendant was associated with the Playboy Bloods; and

4. the Playboy Bloods engaged in or its activities in some way affected commerce between two or more states.

### IV. FACTS SUPPORTING GUILTY PLEA

A. The defendant will plead guilty because he is, in fact and under the law, guilty of the crimes charged.

B. The defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt. The defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offense.

C. The defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offenses.

3

1         D.      The defendant admits and declares under penalty of perjury that the facts set forth
2 below are true and correct:

3         The Bloods is a nationally known criminal street organization whose members engage in drug
4 trafficking and acts of violence. The Playboy Bloods is a local "set" or affiliate of the Bloods, with
5 local control and operation within the Las Vegas, Nevada, metropolitan area. Other Bloods sets
6 within the Las Vegas metropolitan area are Pirus and West Cost Bloods. A subset of the Playboy
7 Bloods is Full Throttle Clique, a group made up of Playboy Bloods members who engage in acts of
8 violence, including murder.

9         The Playboy Bloods operate primarily in a Sherman Gardens Annex, a public housing
10 complex, located at the corner of Doolittle and H Streets, Las Vegas, Nevada, commonly called the
11 "Jets." Playboy Bloods are involved in criminal racketeering acts including murder, attempted
12 murder, robbery and drug trafficking. The main financial activity of the Playboy Bloods is the
13 trafficking of narcotics, primarily crack cocaine. Playboy Bloods members establish "drug spots"
14 in their neighborhood where they sell crack cocaine.

15         The Playboy Bloods' colors are red and black. The Playboy Bloods' symbol is the Playboy
16 bunny. Members use monikers or street names to avoid detection by law enforcement. The
17 monikers typically end in P or B. The Playboy Bloods' structure includes O.G. (original gangster
18 and shot caller or leader), Y.G. (young gangster or mid-level member ), and B.G. (baby gangster or
19 new recruit). Rival street gangs of the Playboy Bloods have included GPK's, Rolling 60s, Piru
20 Bloods, and Donna Street Crips. As such, most violent conflicts with other gangs stem from rival
21 gang members invasion of the Playboy Bloods' drug territory.

22         Defendant is a Y.G. member of the Playboy Bloods and a member of Full Throttle Clique,
23 a group within the Playboy Bloods. Consistent with the Playboy Bloods' goals, the defendant did
24 knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c); that
25 is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Playboy
26 Bloods through a pattern of racketeering activity. The defendant agreed that at least two acts of

4

racketeering activity, specifically second degree murder, would be committed by members of the conspiracy in the conduct of the affairs of the Playboy Bloods.

On or about January 20, 2004 at 11:30 p.m., the defendant aided and abetted the murder of security guard Brian Wilcox in the Jets, 1704 Curran Way, Las Vegas, Nevada. Wilcox and another security guard approached the defendant, and several other Playboy Bloods and told them they had to leave the property. An argument ensued. As the argument became more intense, the security guards rode away on their bicycles to call for backup. A Playboy Blood fired a gun at Wilcox, hitting him three times. The defendant and the others fled the scene. Paramedics transported Wilcox to University Medical Center, where he was pronounced dead at 12:35 a.m. on January 21, 2004.

On November 1, 2004, the defendant aided and abetted the murder of Billy Thomas. On November 1, 2004, at approximately 4:30 a.m., Playboy Bloods members murdered Thomas in the parking lot of the Pecos Terrace Apartments, 3555 E. Lake Mead Blvd., Las Vegas Nevada. The day before Thomas's murder, Playboy Bloods and Full Throttle member Quazi Burns was murdered. Playboy Bloods members believed that a rival Crips gang member had murdered Burns. That night, several Playboy Bloods members, including the defendant, met at the Jets and discussed retaliating against the Crips.

The defendant and the other Playboy Bloods members got into two cars and drove around Crips territory looking for Crips members. When they arrived at Pecos Terrace they spotted Billy Ray Thomas, who was working on his car. Several Playboy Bloods' members got out of the cars carrying firearms, approached Thomas, and began shooting. Playboy Bloods members shot Thomas, believing him to be a Crips gang member, killing Thomas.

The defendant admits that in aiding and abetting the murders of Wilcox and Thomas he acted with malice aforethought; that is he acted deliberately and intentionally with extreme disregard for human life.

The defendant admits that the government could prove beyond a reasonable doubt that the Playboy Bloods' racketeering activities, including drug trafficking, affected interstate commerce.

## V. COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the defendant does not plead guilty or withdraws his guilty plea, the facts set forth in Section IV of this Plea Agreement shall not be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on the defendant's behalf.

## VI. APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A. <u>Discretionary Nature of Sentencing Guidelines</u>. The defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B. <u>Offense Level Calculations</u>. The parties stipulate that the defendant's offense level should be calculated using the Sentencing Guidelines Manual, dated November 1, 2011 ("2012 edition").

The Base Offense Level for Second Degree Murder under the 2012 edition of the Guidelines Manual is 38. USSG §2A1.2.

Defendant's conduct related to the two murders is not grouped, resulting in a two level increase. USSG §3D1.4(a).

Thus Defendant's combined offense level before acceptances of responsibility is 40.

The defendant acknowledges that the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence, notwithstanding any applicable Sentencing Guidelines provisions.

C. <u>Reduction of Offense Level for Acceptance of Responsibility</u>. Under USSG §3E1.1(a), the United States will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing

a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under USSG §3E1.1(b), the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources. The parties agree that a three-level reduction is reasonable, resulting in a final offense level of 37.

D. *Sentencing Recommendation.* The government will recommend that the Court sentence the defendant to the statutory maximum penalty of 20 years imprisonment. The defendnat is permitted to agrue that Court reduce the 20-year statutory maximum penalty by 26 months to account for the period of time that defendant was first eligible for parole in Clark County, Nevada District Court, Case No. 05-C-208966, January 29, 2009, through the day he was paroled, March 21, 2011. The parties acknowledges that the Court does not have to follow that recommendation. However, the parties recognize that Court may not exceed the statutory maximum penalty in this case, which is 20 years, pursuant to 18 U.S.C. § 1963 and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The defendant will not seek a sentence below 17 years and ten months imprisonment. If the defendant seeks a sentence of less than 17 years and ten months imprisonment or credit for time served in other cases besides Clark County, Nevada District Court, Case No. 05-C-208966, the United States may withdraw from this plea agreement.

7

D. <u>Criminal History Category</u>. The defendant acknowledges that the Court may base his sentence in part on the defendant's criminal record or criminal history. The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines.

E. <u>Relevant Conduct</u>. The Court may consider any counts dismissed under this Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F. <u>Additional Sentencing Information</u>. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw his guilty plea.

## VII. APPLICATION OF SENTENCING STATUTES

A. <u>Maximum Penalty</u>. The maximum penalty for RICO Conspiracy in violation of 18 U.S.C. § 1962(d), as charged in the Superceding Indictment, is a 20-year prison sentence, a fine of $250,000, or both. 18 U.S.C. 1963(a).

B. <u>Factors Under 18 U.S.C. § 3553</u>. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence.

C. <u>Parole Abolished</u>. The defendant acknowledges that his prison sentence cannot be

shortened by early release on parole because parole has been abolished.

D.   <u>Supervised Release</u>.  In addition to imprisonment and a fine, the defendant will be subject to a term of supervised release not to exceed 3 years.  18 U.S.C. § 3583(b)(2).  Supervised release is a period of time after release from prison during which the defendant will be subject to various restrictions and requirements.  If the defendant violates any condition of supervised release, the Court may order the defendant's return to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum prison sentence of 20 years.

E.   <u>Special Assessment</u>.  The defendant will pay a $100.00 special assessment per count at the time of sentencing.

## VIII. RESTITUTION

In exchange for benefits received under this Plea Agreement, the defendant agrees to make full restitution in an amount to be determined by the Court for all of the losses the defendant caused by his schemes or offenses, whether charged or uncharged, pled to or not, and by all of his relevant conduct. 18 U.S.C. § 3663(a)(3).  The defendant cannot discharge his restitution obligation through bankruptcy proceedings.  The defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

## IX. FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets and his ability to pay.  The defendant will surrender assets he obtained directly or indirectly as a result of his crimes, and will release funds and property under his control in order to pay any fine, forfeiture, or restitution ordered by the Court.

## X. THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A.   <u>Plea Agreement and Decision to Plead Guilty</u>.  The defendant acknowledges that:

9

1     (1)  He has read this Plea Agreement and understands its terms and conditions;

2     (2)  He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

    (3)  He has discussed the terms of this Plea Agreement with his attorney;

    (4)  The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

    (5)  He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

  The defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial. The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

  B.  <u>Waiver of Appeal and Post-Conviction Proceedings</u>. The defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within the 20 year statutory maximum prison sentence; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

  The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

  The defendant reserves only the right to appeal any unlawful sentence that is above the 20 year statutory maximum.

  The defendant acknowledges that the United States is not obligated or required to preserve

any evidence obtained in the investigation of this case.

## XI.    ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

DANIEL G. BOGDEN,
United States Attorney

DATE 12-6-12

NICHOLAS D. DICKINSON
PHILLIP N. SMITH, JR.
Assistant United States Attorneys
KEVIN ROSENBERG
Trial Attorney

DATE 11-30-12

SHARI KAUFMAN
REBECCA ROSENSTEIN
Assistant Federal Public Defenders
Counsel for the Defendant

DATE 11-30-12

STEVEN BOOTH
Defendant

11